UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARGARITA MENDOZA DE
SUGIYAMA ,

                         Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant.

Case No. 3:22-cv-05952-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

        Margarita Mendoza De Sugiyama, survivor of Faye M. (plaintiff), is the substitute
party in this action on behalf of plaintiff pursuant to 42 U.S.C. § 405(g) for judicial review
of defendant's denial of plaintiff's application for Disability Insurance Benefits (DIB).[1]
Pursuant to 28 U.S.C § 636(c), Fed. R. Civ. Pro. 73, and Local Rule MJR 13, the parties
have consented to have this matter heard by a Magistrate Judge. *See* Dkt. 3. The ALJ's
decision finding that plaintiff was not disabled is challenged. Dkt. 1, Complaint.

I.        BACKGROUND

---

[1] Plaintiff was alive at the time of the ALJ hearing on May 27, 2021, but she passed away on February 28,
2022; her application for benefits has a substitute party pursuing the claim. AR 36. In addition to DIB,
plaintiff also applied for Supplemental Security Income (SSI) benefits. AR 415–20. The Appeals Council
dismissed the appeal of the ALJ's decision with respect to plaintiff's SSI application because Margarita
Mendoza De Sugiyama was not a qualified survivor under 20 C.F.R. § 416.542(b). AR 4. Plaintiff does
not challenge this decision. Dkt. 1 at 2. Defendant does not challenge that Margarita Mendoza De
Sugiyama is a qualifying survivor for DIB under 20 C.F.R. § 404.503. *See generally* Dkt. 22.

Plaintiff filed her application for DIB on May 10, 2019. AR 161, 421–27. She asserted March 11, 2019, as the date of disability onset. AR 161. Her insurance for DIB continues through the end of 2023. *Id.* The hearing before the ALJ was held by phone on May 27, 2021. AR 229–66. The ALJ found plaintiff had the following severe impairments: obesity, asthma, diabetes mellitus with retinopathy and vein occlusion in her right eye, anxiety, and depression. AR 163–64.

The ALJ posed hypothetical questions to the Vocational Expert (VE) (AR 254–62) and based on the VE's testimony, the ALJ found plaintiff had the Residual Functional Capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), with further limitations including: no frequent balancing, stooping, crouching, crawling, kneeling, or climbing of ramps and stairs; no more than occasional climbing of ropes, ladders, or scaffolds; no concentrated exposure to temperature extremes, dust, fumes, gases, poor ventilation, and other noxious odors or chemical irritants; no exposure to unprotected heights or moving machinery; no requirements of close or fine depth perception; and only simple, repetitive, routine tasks with no more than brief, superficial contact with the general public. AR 166.

The ALJ found that given these restrictions, plaintiff would be precluded from performing any of her past relevant work but could work, instead, as a hand packager, store's laborer, or dining room attendant. AR 169–71.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if and only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial

1    evidence is "such relevant evidence as a reasonable mind might accept as adequate to

2    support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

3    citations omitted). When it would be rational to interpret the evidence in more than one

4    way, the Court is required to uphold the decision of the Commissioner. *Mayes v.*

5    *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (as amended).

6         The Court must consider the administrative record as a whole. *Garrison v.*

7    *Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

8    evidence that supports and evidence that does not support the ALJ's conclusion. *Id*.

9    The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

10   not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

11   of the Court's review. *Id.*

12                            II.        DISCUSSION

13        A.  Whether the ALJ Erred in Omitting a Cane Limitation from the RFC

14        Plaintiff argues the ALJ erred in not including a limitation in the RFC for plaintiff's

15   use of a cane. Dkt. 19 at 5–10. Plaintiff testified that she required a cane to stand and

16   walk; that it helped her keep balance; and that a cane had been prescribed by a medical

17   doctor, Eun-Young Ahn, MD. AR 247–48.

18        The use of a hand-held assistive device like a cane is a functional limitation only

19   if it is medically required. *See* SSR 96-9p. "To find that a hand-held assistive device is

20   medically required, there must be medical documentation establishing the need for a

21   hand-held assistive device to aid in walking or standing, and describing the

22   circumstances for which it is needed (i.e., whether all the time, periodically, or only in

23   certain situations; distance and terrain; and any other relevant information)." *Id.*

24

25
                                         3

The ALJ gave two erroneous reasons for not including a cane limitation in the RFC. First, the ALJ excluded the limitation because "treatment records state[d] [plaintiff] was not prescribed an assistive device by a medical doctor." AR 168. This is incorrect – medical evidence shows that Dr. Ahn prescribed the cane. *See* AR 1523–24. Second, the ALJ excluded the limitation because "claimant's doctors did not note that she needed an assistive device." AR 168 (citing AR 1460, 1675). But two medical sources' omission of the need for a cane does not foreclose the possibility that other medical documentation established plaintiff needed one.

Nevertheless, these errors were harmless because plaintiff has not presented sufficient evidence to establish that a cane was medically required. Where "no reasonable ALJ" could have reached a different conclusion on an issue, an error committed with respect to that issue is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). For this reason, if there is no evidence that arguably establishes a cane is medically required, the ALJ's errors here were harmless. *See id.*

The evidence in the record pertaining to plaintiff's need for a cane is: (1) her testimony (AR 247–48); (2) a receipt and rental agreement for a cane (AR 537–38); (3) a treatment note indicating she requested a cane (AR 1521); and (4) two notes from Dr. Ahn that he "ha[s] ordered a prescription for a cane" (AR 1523–24). The first three items of evidence are not "medical documentation establishing the need for" a cane. SSR 96-9p; *see also Dean N. v. Saul*, No. CV 18-09840-DFM, 2020 WL 430962, at *2 (C.D. Cal. Jan. 28, 2020) (neither "a claimant's own testimony" nor notes from providers that plaintiff used a cane "constitute required medical documentation").

The fourth piece of evidence, Dr. Ahn's notes alluding to a prescription, does not "describ[e] the circumstances for which [a cane] is needed," SSR 96-9p, as it just states that a cane was prescribed. *See Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (unpublished opinion) ("[T]he legal issue does not turn on whether a cane was 'prescribed' . . . but whether a cane was 'medically required.'"). And the cane was prescribed in the context of a leg wound, *see* AR 1523–24, which plaintiff later reported to be "essentially healed," AR 1642.

Thus, even if the circumstances requiring a cane could be inferred from context, the prescription still fails to show continued medical necessity. Plaintiff argues that a cane was medically necessary because evidence showed her leg wounds were slower to heal due to her diabetes. Dkt. 23 at 4. But plaintiff points to no medical documentation establishing that she required a cane for this reason. *See id.* The ALJ thus committed no reversible error in not including a cane limitation in the RFC.

B. Whether the ALJ erred in considering medical opinions from Dr. Tsien and Dr. Williams

1.  Dr. Albert Tsien, MD's Medical Opinion

Plaintiff challenges the ALJ's assessment of the medical opinion of treating physician Dr. Tsien. Dkt. 19 at 12–14. Under the 2017 regulations applicable to this case, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). "[A]n ALJ cannot

1    reject an examining or treating doctor's opinion as unsupported or inconsistent without

2    providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32

3    F.4th 785, 792 (9th Cir. 2022).

4            Dr. Tsien provided a medical assessment of plaintiff on February 3, 2021. AR

5    1759–62. He opined that plaintiff could only stand for twenty minutes at a time; could

6    not walk for more than two hours during a normal working day; and would be off task at

7    least 20% of the time. *Id.*[2]

8            The ALJ found Dr. Tsien's opinion unpersuasive. AR 169. With respect to

9    supportability, the ALJ found that Dr. Tsien's "treatment notes [did] not support his

10   opinions. For example, [Dr. Tsien] stated that claimant's asthma is stable and doing

11   'well' on prednisone and Dulera.'" *Id.* (citing AR 2089, 2091, 2093, 2095–96). The

12   supportability factor considers how "relevant the objective medical evidence and

13   supporting explanations presented by a medical source are to support his or her

14   medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ must consider both the

15   opinion and the other evidence presented by the medical source in making this

16   determination. *See Garrison*, 759 F.3d at 1014 n.17.

17           Defendant asserts that Dr. Tsien's opinion was "based on [plaintiff's] asthma."

18   Dkt. 19 at 12; AR 1759. Defendant also contends Dr. Tsien's opinion provided no

19   explanation for the limitations he opined. AR 1759–62.

20

21   [2] Dr. Tsien submitted several statements which the ALJ cited in addressing Dr. Tsien's opinions. *See* AR
     169 (citing AR 799, 1665–68, 1758–63, 1974, 1992–93, 2062–64). Plaintiff challenges the ALJ's decision
22   discounting Dr. Tsien's February 3, 2021 opinion that spanned a period from March 11, 2019 through
     February 3, 2021 (AR 1758–63), in her opening brief. *See* Dkt. 19 at 12–13. The Court therefore only
23   considers whether the ALJ properly considered that opinion. *See Carmickle v. Comm'r of Soc. Sec.
     Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328
     F.3d 1145, 1164 (9th Cir. 2003)) (noting that the Court need not address matters that are not "'specifically
24   and distinctly'" argued in plaintiff's opening brief).

25

                                                         6

Dr. Tsien's treatment notes provided general accounts of plaintiff's asthma, her medications, and sinus-related issues, but shed no light on how her asthma impacts her ability to stand, walk, or concentrate. *See* AR 1291, 1296, 1440–41, 1791, 1794, 1806–08, 1813–15, 1819–21, 1840–44, 2007–50. Dr. Tsien's treatment notes almost uniformly describe plaintiff's asthma condition as being "stable" on her medications. *See* AR 877, 1291, 1794, 1844, 2089, 2091, 2096. Plaintiff's asthma was worsened by an upper respiratory infection (AR 1570) and forest fires (AR 2034, 2036, 2038), but treatment notes indicated both conditions were temporary.

Dr. Tsien describes effects of medications that were being taken by plaintiff to treat her asthma, and states that the medications "led to wt gain. Diabetes . . .." AR 1760. He opined that plaintiff would be absent from work more than four days per month because of impairments or treatment. AR 1762. The symptoms of plaintiff's asthma attacks and impact on her ability to function in the workplace, were summarized by Dr. Tsien, as "shortness of breath", "chest tightness", "wheezing", "episodic acute asthma", "episodic acute bronchitis", "fatigue", and "coughing" (AR 1759), and these symptoms would lead to a situation where she would need to take three to four unscheduled breaks during the workday, of 20 minutes each. AR 1760. She would be off-task 20% of a typical workday. AR 1761. Dr. Tsien's assessment also included an opinion about plaintiff being restricted to lifting and carrying certain weights and having restricted movement. *Id.*

Plaintiff argues that "stable did not mean able to work or function effectively." Dkt. 19 at 11–12. It is true, as plaintiff argues, that "stable" can be a "relative term[]." *Id.* (quoting *Perez v. Astrue*, No. 1:08-CV-0463-BAK, 2009 WL 3011647 (E.D. Cal. Sept.

1  17, 2009)). Yet, this Court should not re-weigh evidence if the ALJ has drawn

2  reasonable inferences. When it would be rational to interpret the evidence in more than

3  one way, the Court is required to uphold the decision of the Commissioner. *Mayes v.*

4  *Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (as amended). The ALJ's determination

5  about the unsupportability of Dr. Tsien's opinion was not legally insufficient, and it is

6  supported by substantial evidence.

7        2.  Opinions of Dr. Jennifer Williams, MD

8        Treating physician Dr. Williams completed an assessment of plaintiff's conditions

9  on April 3, 2020. AR 1460–62.[3] She opined that plaintiff would be absent from work five

10  days or more each month. AR 1462. The ALJ found this statement unpersuasive, AR

11  170, and plaintiff challenges this finding, Dkt. 19 at 9–12.[4]

12        Plaintiff asserts that Dr. Williams provided information about plaintiff's health in

13  the treatment records of Kaiser Permanente, and this explains the reasons why Dr.

14  Williams opined that plaintiff would be absent five or more days each month. Dkt. 19, at

15  10-11. For example, on December 5, 2018, Dr. Williams observed that Prednisone (for

16  asthma) was causing plaintiff to have problems with high blood sugar due to type 2

17  diabetes. AR 662. The high blood sugars occurred often and regularly made plaintiff ill

18  and unable to work; the absences were frequent. *Id.;* AR 1978 (opinion of Dr. Williams

19  dated 12-26-2018, opining that high blood sugar levels, caused by plaintiff's prescribed

20

21  _____

   [3] This assessment is duplicated at AR 1675–77.

22  [4] Several other statements from Dr. Williams appear in the record, and the ALJ cites these in his
discussion of Dr. Williams' statements. AR 170 (citing AR 528–30, 1460–62, 1675–77, 1965–67, 1977–
23  81, 2082–83). Plaintiff only challenges the ALJ's assessment of Dr. Williams' opinion as to the frequency
of plaintiff's absences, *see* Dkt. 19 at 9, which appears only in the statement from April 3, 2020, so the
24  Court need only address that statement, *see Carmickle*, 533 F.3d at 1161 n.2.

25

Prednisone for asthma, created a situation where plaintiff became ill over and over, work attendance was negatively affected); AR 1346-1347 (opinion of Dr. Williams dated 3-28-2019, stating that plaintiff's health was declining, she had asthma flares, infections, and slow healing injuries due to the Prednisone taken for asthma, and high blood sugar with type 2 diabetes).

An ALJ may consider the quality of any explanation given by a medical source when evaluating the opinion. *Ford v. Saul,* 950 F.3d 1141, 1149 (9th Cir. 2020). The ALJ errs if they reject a physician's check-box form opinion, by failing to consider medical records that support the check-box form – if the medical records are consistent with the opinions indicated on the form. *Garrison v. Colvin,* 759 F.3d 995, 1013 (9th Cir. 2014).

Defendant argues Dr. Williams' statement does not fit within the administrative definition of a "medical opinion." *See* Dkt. 22 at 10. Rather, defendant argues, it was a "statement that [plaintiff was not] . . . able to perform regular or continuing work," which is an "issue[] reserved to the Commissioner" and requires no analysis by the ALJ under the new regulations. *See* Dkt. 22 at 10–11; 20 C.F.R. § 404.1520b(c)(3).

The 2017 regulations give "a narrower definition of medical opinions" that "focus[es]" on "perspectives from medical sources about claimants' functional abilities and limitations." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg 62560–01 (Sept. 9, 2016) [*2017 Regulations NOPR*]. A medical opinion is

> a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in the following abilities: [. . .]
> (i) [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions

(including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
(ii) [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
(iii) [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
(iv) [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). "Judgements about the nature and severity of [a claimant's] impairments" were medical opinions under the old regulations but fall into the category of "other medical evidence" under the new regulations. *See* 20 C.F.R. §§ 404.1513(a)(3); 404.1527(a)(1). That category also includes any medical evidence that is neither a medical opinion nor objective medical evidence. 20 C.F.R. § 404.1513(a)(3).

Dr. Williams' assessment about the number of absences would only be categorized as a medical opinion if it addresses whether plaintiff has "impairment-related limitations or restrictions" in her abilities to perform physical, mental, or other "demands of work activities." 20 C.F.R. § 404.1513(a)(2)(i)–(iv).

Plaintiff argues that Dr. Williams' statement is a medical opinion because it shows plaintiff cannot sustain work on a "regular and continuing basis" and "the regulations and rulings contemplate only regular and continuing work" in formulating the RFC. Dkt. 23 at 6. An ALJ first considers the nature and extent of the individual's limitations and then determines the RFC for "work activity on a regular and continuing basis." 20 C.F.R. §404.1545(b)). The 2017 regulations "narrowe[d]" the definition of medical opinions to focus on abilities and limitations – that is, statements opining on the nature and extent of work-related limitations. *See 2017 Regulations NOPR* at 62560–

10

01. This is a separate inquiry from the inquiry that is required for assessment of the RFC.

Because Dr. Williams' opinion made a connection or explanation between plaintiff's limitations due to asthma treatment with Prednisone, and the high blood sugar from type 2 diabetes, to identify how specific limitations would cause plaintiff to fail in the "demands of work activities," – "[The] ability to perform other demands of work, such as seeing, hearing, or using other senses"; including the capacity to perform any work whatsoever – this opinion fit fits within the category of "medical opinion." 20 C.F.R. § 404.1513(a)(2)(iii).

The ALJ asserted that Dr. Williams provided no explanation for her projection of plaintiff's absences. AR 170. This observation is not accurate. The record shows Dr. Williams made a connection between the illnesses and injuries that caused a work-related limitation. This case is therefore distinguishable from the situation in *Ford v. Saul,* 950 F.3d 1141, 1149, 1155 (9th Cir. 2020), where the Ninth Circuit Court of Appeals found the ALJ properly rejected a physician's opinion and determined a treating physician's brief, conclusory opinion lacked a foundation – there was no explanation of the basis for their conclusion.

Here, Dr. Williams listed plaintiff's high blood sugar, caused by side effects of another medication – Prednisone – as the basis for her opinion. This reason is supported by the record, because the medical documentation shows exacerbation of plaintiff's type 2 diabetes, caused by the medication Prednisone – that she was required to take to control her asthma – and this medication side effect created a situation where plaintiff gained weight and plaintiff's injuries and illnesses became more problematic in

terms of functioning in the workplace, due to illnesses and conditions that were associated with high blood sugar from type 2 diabetes (for example, the eye bleeding, leg injuries that were slow to heal, and kidney disease); this supported Dr. Williams' assessment that plaintiff would not be able to do any work at all for more than five days per month, on a regular basis. AR 649-653, 686, 709-711. Dr. Tsien's opinion also noted the link between plaintiff's asthma medications, weight gain, and the difficulty controlling her type 2 diabetes. AR 1760. Dr. Tsien's opinion therefore also corroborates and supports Dr. Williams' opinion.

    C. <u>Whether the ALJ Properly Evaluated Plaintiff's Subjective Testimony</u>

Plaintiff argues the ALJ erred in rejecting her testimony about the severity of her symptoms. Dkt. 19 at 14–15. "[T]he ALJ can reject [plaintiff's] testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons" unless there is affirmative evidence of malingering. *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Plaintiff testified that she had difficulties standing and walking for prolonged periods. AR 246. She could only walk 15–20 minutes and stand 20–30 minutes at a time. AR 247. She periodically needed to put her feet up to rest them. AR 247. She testified that, when she was a custodian, her feet would swell and become inflamed such that it hurt to put on shoes. AR 264. Her work as a custodian, the VE testified, was at a medium level of exertion. AR 258.

Plaintiff also stated that she had severe asthma and diabetes; when she was injured, it would take a longer time to heal, and she was prone to infections. AR 237. She had to wear special coverings on her legs because she easily became injured if

she bumped into things. AR 239-240. In December 2020, she sustained a wound that required 38 stitches from bumping into a stool. AR 239. She testified that her doctor told her if she did not stop working, she would likely die within one year; if she kept working, she would likely die within ten years. AR 237. Her asthma would get bad; she testified that, for example, one day she had no energy because of lack of oxygen. AR 250. And, because plaintiff was taking Prednisone for asthma, this caused blood sugar increases, and exacerbated the illness associated with type 2 diabetes. AR 250.

Plaintiff testified that she was unable to drive, or read, because her right eye had a condition related to having to take Prednisone for asthma, and the eye was bleeding. AR  241–242.

The ALJ rejected plaintiff's alleged walking and standing-related limitations for two reasons. First, the ALJ found that plaintiff's asthma was controlled by medication. AR 168. The ALJ based this conclusion on Dr. Tsien's treatment notes stating that plaintiff's asthma was "stable", and that plaintiff had described her asthma as "doing well" (AR 2089, 2091, 2093, 2096) and plaintiff's testimony that prednisone "control[s] [her] asthma" (AR 238). Symptoms that can be controlled by medication are not disabling. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

In this case, the ALJ did not explain why he credited plaintiff's statements that her asthma was controlled but not the statements she made in the same hearing that, despite her asthma being controlled, she cannot walk and stand for prolonged periods of time. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible . . .."). Plaintiff had also testified that the Prednisone she took for asthma caused her blood sugar to increase, and this caused problems with type 2

13

diabetes. High blood sugars resulted in illness and injury which required additional recovery time for a person with type 2 diabetes, which plaintiff testified to as another reason why her work-related functioning was limited. And the record does not show plaintiff's medication controlled her impairments to the extent of being able to walk and stand for prolonged periods. The ALJ's decision did not adequately "set forth the reasoning behind [his] decision [] in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).[5]

Second, the ALJ found that plaintiff's alleged walking and standing-related limitations were contradicted by her activities of daily living and her statement that she could walk one mile. AR 168. Such activities are only a valid reason for rejecting plaintiff's testimony if they are transferrable to work settings or inconsistent with her alleged symptoms. *See Orn v. Astrue*, 495 F.3d 623, 639 (9th Cir. 2007). The ALJ did not explain why either situation was present here. Plaintiff indicated she could walk one mile, but she would need to rest for thirty minutes after doing so. AR 476. It is not apparent how this is inconsistent with her testimony that she could not walk for prolonged periods of time – there is no evidence in the record to suggest that walking one mile requires a lengthy period. AR 246. It is also unclear how her abilities to clean and do laundry once a week and make herself simple meals (AR 473) either contradict her testimony or demonstrate she has skills transferrable to a work setting.

D. Whether the errors were harmless.

---

[5] The Court notes that it found no error with respect to the ALJ's consideration of Dr. Tsien's "stable" treatment notes in discussing Dr. Tsien's opinion. This is not inconsistent with determining the ALJ erred in relying on those same treatment notes in rejecting plaintiff's subjective testimony. With Dr. Tsien's opinion, the issue was with the lack of an explanation accounting for the discrepancy between Dr. Tsien's treatment notes and his opinion. An ALJ can discount a medical opinion for its lack of supporting explanation. *See* 20 C.F.R. § 404.1520c(c)(1).

The ALJ erred in assessing the opinion of Dr. Williams, and plaintiff's testimony. These errors were not harmless. The ALJ's RFC limited plaintiff to medium work without additional walking or standing restrictions. AR 166. "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10. If credited, plaintiff's testimony shows she cannot perform at this exertional level. Thus, the error is not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

If limitations described by Dr. Williams' opinions, and as described by plaintiff in her testimony, were incorporated into the RFC, plaintiff would not be able to maintain full-time employment in a competitive workplace, due to the number of absences. AR 261 (VE testifies that no more than one day per month would be allowed for absences, in unskilled work).

D.   Whether the Court should reverse with a direction to award benefits

Plaintiff argues that this case should be remanded for an immediate award of benefits. Dkt. 19 at 2, 16. If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

Remand for award of benefits is generally proper only where:

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo v. Berryhill*, 871 F.3d 664, 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). The Ninth Circuit emphasized in *Leon* that even when each

element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

The Court is mindful that, in light of plaintiff having passed away, a remand for further proceedings in this case would be of limited utility, as no new testimony or medical evaluations regarding plaintiff's condition during the period at issue would be forthcoming, and providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")). Accordingly, remand for an award of benefits is the appropriate remedy.

### III.      CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is **REVERSED** for an award of benefits.

Dated this 17th day of November, 2023.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge